NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                       :
TITAN STONE, TILE & MASONRY, INC.,
                                                       :
        Plaintiff,                                                          Civ. No. 05-3362  (GEB)
                                                       :
        v.                                             :
                                                                            **MEMORANDUM OPINION**
HUNT CONSTRUCTION GROUP, INC.,         :
UNITED STATES FIDELITY AND
GUARANTY COMPANY, FIDELITY &            :
DEPOSIT OF MARYLAND,
AND FEDERAL INSURANCE COMPANY    :

        Defendants.                                    :
_____

**BROWN, Chief Judge**

        This matter comes before the Court upon Defendant Hunt Construction Group Inc.'s

("Hunt" or "Defendant") Motion to Dismiss Count II of Titan Stone, Tile & Masonry, Inc.'s

("Titan Stone" or "Plaintiff") Second Amended Complaint, Hunt's Motion for Judgment on the

Pleadings on Count VI of Titan Stone's Second Amended Complaint, and Hunt's Motion to

Strike Titan Stone's Jury Demand.  For the reasons set forth below, Hunt's motions will be

granted.

**I.      BACKGROUND**

        Hunt is a construction firm that provides general contracting services in the construction

industry.  (Sec. Am. Compl. ¶ 3; Answer ¶ 3.)  Hunt was hired to provide the contracting work

for the construction of a library (the "Project") on behalf of the College of New Jersey in Ewing,

New Jersey (the "Owner").  (*Id.*)  Following a bidding contest among potential subcontractors,

Hunt entered into a valid and binding Subcontract Agreement (the "Agreement") with plaintiff

Titan on October 13, 2003, whereby Titan would perform services as a subcontractor on the

Project. (Sec. Am. Compl. ¶¶ 4-5; Answer ¶¶ 4-5.)  In particular, Titan was hired for work

relating to the installation of the exterior panelized wall system for the project (the "Wall

System").  (Sec. Am. Compl. ¶ 5; Answer ¶ 5.)  Titan now alleges that Hunt failed, from the very

beginning of the Project, to fulfill its obligations under the Agreement.  (Sec. Am. Compl. ¶¶ 6-

7.)

First, Titan claims to have been concerned that the structural drawings upon which Hunt

was relying for the Project were inconsistent with the use of Titan's Wall System.  (Sec. Am.

Compl. ¶¶ 6-8.)  According to Titan's Second Amended Complaint, Titan was assured by Hunt

that the Owner's engineer for the project, STV Incorporated ("STV"), would work with Titan

and its engineer, Curtin Wall Design & Consulting, Inc. ("Curtin"), to integrate Titan's Wall

System into the structure of the building.  (*Id.* at ¶ 8.)  Titan now alleges that these

representations were false.  (*Id.*)

In addition, Titan's Second Amended Complaint states that Hunt and STV promised to

provide Titan with essential drawings relating to the Project, without which Titan could not

begin work on the Wall System.  (*Id.*)  Titan claims that it was not provided the promised

drawings at the time they were needed, and in fact did not receive them until July 1, 2004.  (*Id.*)

As a result of this and Hunt's allegedly negligent management of the Project in general, Titan's

part of the Project incurred significant delays.  (*Id*. at ¶¶ 8-11.)

Finally,  Titan alleges that Hunt was paid up to $2,000,000 for work performed by Titan,

and yet refused to forward those funds to Plaintiff on the grounds that it held Titan responsible

for the delays and other problems incurred during the Project.  (*Id*. at ¶¶ 16-17.)  Titan claims

that the United States Fidelity and Guaranty Co., Fidelity & Deposit of Maryland, and Federal

Insurance Company (collectively, "the Sureties") issued Payment Bonds and Performance Bonds

in varying amounts on July 31, 2003 to assure the payment by Hunt of its obligations to, *inter*

*alia*, the subcontractors, and to assure performance by Hunt of its obligations to the Owner under

the Agreement.  (*Id*. at  ¶¶ 26-31.) Titan also claims that while Hunt promised that it would pay

Titan under the Agreement for all the work it performed on the Project - including all extra work

resulting from the delays allegedly caused by Hunt,  (*id*. at ¶ 14),  Hunt in fact terminated Titan

once the Wall System was installed.  (*Id*. at ¶ 15.)

On October 13, 2006, Titan Stone filed its corrected Second Amended Complaint against

Defendants in this Court, alleging Breach of Contract by Hunt (Count I), Fraud (Count II),

Anticipatory Breach/Repudiation (Count III), Breach of Implied Covenant of Good Faith and

Fair Dealing (Count IV), Quantum Meruit (Count V), Conversion (Count VI), Unjust

Enrichment (Count VII), Constructive Trust (Count VIII), Violation of the New Jersey Trust

Fund Act (Count IX), and claims against the Sureties under the payment bonds (Count X).  On

November 9, 2006, Hunt filed a Motion to Dismiss Count II and for Judgment on the Pleadings

on Count VI.[1]  On November 13, 2006, Hunt also filed a Motion to Strike Plaintiff's Jury

Demand.

---

[1]     The Court notes that while Hunt's motion is captioned "Motion to Dismiss Count II and
for Judgment on the Pleadings on Count VI of the Second Amended Complaint," its brief
in support of the motion essentially seeks dismissal of both those counts under Fed. R.
Civ. P. 12(b)(6).  This Court will consider Hunt's motion as a motion to dismiss Counts
II and VI.

## II.     DISCUSSION

### A.     MOTION TO DISMISS

A rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246 (1980). "The question before the court is not whether plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief." *Mobile Dredging & Pumping Co. v. City of Gloucester*, No. 04-4624, 2005 U.S. Dist. LEXIS 16601, at *7 (D.N.J. Aug. 4, 2005), *citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim." *Mobile Dredging*, at *7, *citing Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).

### 1.     HUNT'S MOTION TO DISMISS COUNT II FOR FAILURE TO SATISFY THE PLEADING REQUIREMENTS OF FRCP 9(b).

Hunt argues that Titan Stone has failed to plead its fraud cause of action with particularity – as required under Federal Rule of Civil Procedure 9(b) – and that Count II of Titan Stone's Second Amended Complaint should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(6).  This Court disagrees.

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  FED. R. CIV. P. 9(b).  "[A] plaintiff can meet this heightened pleading standard by alleging the identify of the person who made the alleged misrepresentation,

the general content of the misrepresentation, along with the date, place and time the

representation was made." *Folkman v. Roster Fin., LLC*, No. 05-2099, 2005 WL 2000169, at \*5

(D.N.J. Aug. 16, 2005), *citing Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004).

This Circuit has, however, been relatively flexible in its application of Rule 9(b).

"Plaintiffs are[, for example,] free to use alternative means of injecting precision and some

measure of substantiation into their allegations of fraud." *Seville Indus. Machinery Corp. v.*

*Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (holding that plaintiffs, by

identifying with specificity the pieces of machinery that were the subject of the alleged fraud,

and the nature and subject of the alleged misrepresentation, could withstand a motion to dismiss

under 9(b) despite their failure to "describe the precise words used."); *see also United States v.*

*Kensington Hosp.*, 760 F. Supp. 1120, 1125-26 (E.D. Pa. 1991) (holding that plaintiff had met

9(b) standards by identifying the time period during which the alleged fraud occurred and

identifying some of the locations of the alleged fraud).  Courts may also relax the requirements

of Rule 9(b) upon a showing that the necessary "factual information is peculiarly within the

defendant's knowledge or control." *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 645 (3d Cir.

1989).

In the case at bar, Hunt argues that Titan's Second Amended Complaint fails to allege: (i)

that any statements made by Hunt representatives were false, (ii) that those representatives knew

the statements to be false, and (iii) that Titan was not aware that the statements were false.  Mot.

at 7.  Hunt acknowledges that Plaintiff addresses elements of fraud in paragraphs 82-83 and 96-

103 of its Second Amended Complaint, but claims that "these paragraphs lack particularity," as

they allegedly fail to identify the employee who made the representation, and fail to specify the

time and place of the alleged representation. *Id*. at 8.  Plaintiff responds that its allegations of

fraud were in fact fully and adequately set out in paragraphs 82 through 85 and paragraphs 95

through 103 of the Second Amended Complaint, and insists that these allegations meet the

pleading requirements adopted by this Circuit.  Opp'n Br. at 10-11.

   This Court agrees with Plaintiff and finds that Count II satisfies the pleading

requirements of Federal Rule of Civil Procedure 9(b).  Indeed, the Court finds that paragraph 84

of the Second Amended Complaint, in particular, offers a comprehensive and detailed list of the

alleged misrepresentations, many of which are described in significant detail.  To cite but one

example, subsection g. of paragraph 84 refers to a letter dated February 3, 2005 sent from Mr.

Kobayashi (a Hunt employee) to Mr. Farina, Sr. (the President of Titan) stating that the funds

received by Hunt from the Owner were "in the process of clearing the bank[, and that] once this

ha[d] been completed the check [would] be cut."  Compl. ¶ 84.  Plaintiff notes that "[t]he

payment was never made by Hunt." *Id.*

   The Court finds that such allegations properly identify the time and place of the alleged

misrepresentation, the nature of the misrepresentation and the identify of the person making the

representation, and should therefore be deemed to satisfy the requirements of Rule 9(b).  *See*

*Folkman*, at \*5. For the foregoing reasons, taking all of the allegations of fact as true and

construing them in a light most favorable to the nonmovant, this Court finds that Plaintiff's

allegations adequately state a claim under Rule 9(b).  The Court will therefore deny Defendants'

Motion to Dismiss Count II for failure to meet the heightened pleading requirements for fraud.

As discussed below, however, the Court will dismiss that Count on other grounds.

2.      HUNT'S MOTION TO DISMISS COUNTS II AND VI FOR FAILURE
TO COMPLY WITH THE ECONOMIC LOSS DOCTRINE.

Hunt also claims that Titan Stone's claims of fraud (Count II) and conversion (Count VI)

should be dismissed under Federal Rule of Civil Procedure 12(b)(6), on the grounds that the

economic loss doctrine precludes Plaintiff from seeking the type of damages requested under

those Counts.  The Court will grant Hunt's motion.

The economic loss doctrine "bars a plaintiff from recovering purely economic losses

suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that

the defendant's conduct caused actual physical harm to a plaintiff or his property."  *Public

Service Enter. Group, Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184, 193 (D.N.J. 1989); *see

also Kirtley v. Wadekar*, No. 05-5383, 2006 U.S. Dist. LEXIS 60309, at *11 (D.N.J. Aug. 24,

2006) ("The economic loss doctrine, put simply, holds that purchasers of personal property,

whether commercial entities or consumers, should be limited to recovery under contract

principles.") (quotations omitted).  In essence, the doctrine "prohibits plaintiffs from recovering

in tort economic losses to which their entitlement only flows from a contract."  *Shan Indus. LLC

v. Tyco Int'l (US), Inc.*, No. 04-1018, 2005 U.S. Dist. LEXIS 37983, at *14 (D.N.J. Sept. 12,

2005), *quoting Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995).

While the doctrine has predominantly been applied in connection with transactions for

goods, *see, e.g., Kirtley*, at *11; *Alloway v. General Marine Indus., L.P.*, 149 N.J. 620 (N.J.

1997), it has also been found, in New Jersey, to apply to contracts for services.  *See Bracco

Diagnostics Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557 (D.N.J. 2002) (applying

doctrine to service contract); *Dynalectric Co. v. Westinghouse Electric Corp.*, 803 F. Supp. 985

(D.N.J. 1992) (applying doctrine to subcontract for construction of electrical power plant).

As explained above, Plaintiff's fraud claim is premised on the allegation that Hunt knew it would not pay Titan for work performed, yet promised Titan imminent payment to ensure its continued performance.  Compl. ¶¶ 95-103.  As for Plaintiff's conversion claim, it is grounded in Titan's belief that Hunt has been paid $2 million for work performed by Titan, and yet has refused to forward those monies to the Plaintiff.  *Id.* at ¶¶ 122-29.

There is no denying that Plaintiff seeks monetary damages under Counts II and VI.  *See* Compl. ¶¶ 103, 129.[2]  It is also clear to the Court that the damages sought by Plaintiff under each of those counts are damages to which they were entitled, if at all, under the Agreement. Accordingly, this Court finds that Plaintiff's fraud and conversion claims are barred under the

---

[2]     The requests for relief read, in full:

> WHEREFORE, Titan demands judgment against Hunt:
>        a. awarding Titan compensatory damages or, in the alternative, rescission of the Subcontract and payment to Titan in quantum meruit of the reasonable value of the work performed by Titan;
>        b. awarding Titan punitive damages;
>        c. awarding Titan costs of suit;
>        d. awarding Titan reasonable attorneys' fees;
>        e. awarding Titan interest; and
>        f. awarding Titan such other relief as the court deems equitable and just.

Compl. ¶ 103.

> WHEREFORE, Titan demands judgment against Hunt:
>        a. awarding Titan compensatory damages;
>        b. awarding Titan punitive damages;
>        c. awarding Titan costs of suit;
>        d. awarding Titan reasonable attorneys' fees;
>        e. awarding Titan interest;
>        f. awarding Titan such other relief as the court deems equitable and just.

Compl. ¶ 129.

doctrine of economic loss, as they seek the recovery of economic losses in tort when Plaintiff's

alleged entitlement to the monies flowed from a contract.  *See Shan Indus*., at \*14.

### B.     MOTION TO STRIKE JURY DEMAND

Hunt argues that the Court should strike Plaintiff's request for a jury trial.  This Court

finds that Titan Stone has waived its right to a jury trial and will grant Hunt's motion.

In diversity cases such as the one at bar, "the right to a jury trial . . . is to be determined

as a matter of federal law."  *Simler v. Conner*, 372 U.S. 221, 222 (1963).  A federal court may

enforce a contractual waiver of the right to jury if the "party waiving such [a] right do[es] so

voluntarily and knowingly based on the facts of the case."  *First Union Nat'l Bank v. United*

*States*, 164 F. Supp. 2d 660, 663 (E. Pa. 2001), *citing, inter alia*, *Brookhart v. Janis*, 384 U.S. 1,

4 (1966 ) ("[F]or a waiver [of a constitutional right] to be effective it must be clearly established

that there was an intentional relinquishment or abandonment of a known right or privilege.").  A

waiver is deemed voluntary and knowing when:

> (1) there was no gross disparity in bargaining power between the
> parties,
>
> (2) the parties are sophisticated business entities,
>
> (3) the parties had an opportunity to negotiate the contract terms,
> and
>
> (4) the waiver provision was conspicuous.

*Triboro, Inc. v. Siren*, *Inc.*, No. 05-997, 2006 U.S. Dist. LEXIS 75722, at \*18 (D.N.J. Oct. 18,

2006), *quoting First Union*, 164 F. Supp. 2d at 663.

Hunt notes that the Agreement states, in relevant part, that:

> Hunt shall have the sole and exclusive right to determine whether
> any dispute, controversy, or claim arising out of or related to this

> Subcontract, or breach thereof, shall be submitted to a court of law
> or arbitrated under the auspices of the American Arbitration
> Association in accordance with its Construction Industry
> Arbitration Rules . . . . *In the event the matter is submitted to a*
> *court, Hunt and Subcontractor [Titan] hereby agree to waive their*
> *right to trial by jury and covenant that neither of them will request*
> *trial by jury in any such litigation.*

Agreement, Section 34.3 (emphasis added).  Plaintiff argues, however, that Titan's purported

waiver of jury trial was neither knowing nor voluntary.  Mot. to Strike Opp'n Br. at 3. In

particular, Titan notes that the allegedly vast difference in bargaining power between Hunt

("approximately 1,000 employees nationwide," *id.*) and Titan (who claims not have been

represented by counsel in connection with the execution of the subcontract) must be considered

by the Court as a factor in favor of enforcing the jury-waiver provision.  *Id.*

In addition, Titan contends that the waiver of jury trial provision in the Agreement was

neither conspicuous nor clear.  *Id.*  Titan highlights the placement of the provision, on pages 34

and 35 of a thirty-six page single-spaced contract, *id.* at 4, and argues that such a provision

should have been displayed on the signature page of the document, "where it would be evident to

someone signing the contract." *Id.* at 5.

Hunt, however, derides Plaintiff's attempt to portray itself as a small, unsophisticated

operation compelled to enter into the Agreement with Hunt without the aid of legal counsel,

noting in particular that Hunt did not have any legal counsel present during the negotiations with

Titan either.  Mot. to Strike Reply Br. at 4.  Hunt adds that the Subcontract expressly provided

that Titan "had the opportunity to consult its attorney regarding this Subcontract." *Id*. at 5.

In addition, Hunt contends that Titan is a sophisticated party who not only has been

involved in numerous construction projects over its 30 years in business, but who also had the

upper hand in negotiations with Hunt.  *Id*. at 6.  Finally, Hunt claims that Titan Stone had seven

months to review the thirty-six page draft of the Agreement, and that the jury waiver clause was

clear and in plain view.  *Id*. at 7.

Reviewing all the evidence presented by the parties,[3] this Court finds that there was no

significant disparity in bargaining power between Hunt and Titan, both of which are

sophisticated business entities.  In addition, the Court finds that the parties had ample

opportunity to negotiate the terms of the Agreement – including the jury waiver clause – and

finds that the waiver provision was entirely conspicuous.  Accordingly, the Court holds that

Titan Stone's waiver of its right to jury trial was made voluntarily and knowingly, and the Court

shall therefore enforce the Agreement's jury waiver provision.

## III.     CONCLUSION

For the foregoing reasons, this Court will grant Hunt's Motion to Dismiss Counts II and

VI of Titan Stone's Complaint, and will grant Hunt's Motion to Strike Titan Stone's Jury

Demand.  An appropriate form of Order accompanies this Memorandum Opinion.


Dated January 22, 2007


                                                                      s/ Garrett E. Brown, Jr.
                                                                      GARRETT E. BROWN, JR., U.S.D.J.

---

[3]     This Court has noted recently that '[n]either the Third Circuit, nor the District Court of
New Jersey, has addressed the issue of who bears the burden of proving the existence of
the conditions for enforcement of a jury waiver, and the other Circuit Courts are split on
the issue." *Kennedy Funding*, *Inc. v. Lion's Gate Dev., LLC*, 2006 U.S. Dist. LEXIS
48997, at *12 n.2 (D.N.J. 2006).  In the case at bar, however, as in *Kennedy*, there is little
dispute regarding the facts surrounding the jury waiver, so the Court need not address
this question. *Id.*