NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

TITAN STONE, TILE & MASONRY, INC., :

    Plaintiff, :      Civ. No. 05-3362 (GEB)

    v. :

HUNT CONSTRUCTION GROUP, INC., :      **MEMORANDUM OPINION**

    Defendant. :

HUNT CONSTRUCTION GROUP, INC., :

    Third-Party Plaintiff, :

    v.

INTERNATIONAL FIDELITY INSURANCE :
COMPANY, :

    Third-Party Defendant. :

---

**BROWN, Chief Judge**

    This matter comes before the Court upon Defendant Hunt Construction Group Inc.'s ("Hunt") ("Hunt" or "Defendant") motions in limine (i) to preclude Titan Stone, Tile & Masonry, Inc. ("Titan Stone" or "Plaintiff") from introducing evidence of delay claims and constructive acceleration at trial ("Hunt MIL 1"), (ii) to exclude extrinsic evidence offered by Titan Stone that contradicts the integration clause of the parties' subcontract ("Hunt MIL 2"), (iii) to preclude Titan Stone's expert, Joseph M. Sullivan, from testifying ("Hunt MIL 3"), and (iv) to preclude Josh Keller from testifying ("Hunt MIL 4"), and Titan Stone's motions in limine to bar the testimony of Hunt's experts, Allyn Kilsheimer ("Titan MIL 1") and Charles Boland ("Titan MIL

2"). The Court has decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant Hunt's motion in limine No. 1, deny Hunt's motions in limine Nos. 2, 3 and 4, and deny Titan's motions in limine Nos. 1 and 2.

I. BACKGROUND

Since the parties are familiar with the facts of this case, the Court will not repeat them except as necessary to resolve these pending motions. On July 1, 2005 Titan Stone filed a complaint setting forth a number of claims against Hunt arising out of a construction agreement (the "Agreement") between Hunt and Titan Stone. Titan Stone filed its first amended complaint (the "First Amended Complaint") on March 20, 2006, and its second amended complaint (the "Second Amended Complaint") on October 13, 2006. The case is scheduled for a non-jury trial. Both parties filed their motions in limine on May 14, 2007. The Court will address each motion in turn.

II. DISCUSSION

A. HUNT'S MOTION IN LIMINE NO. 1

Hunt contends that Titan Stone waived its constructive acceleration claim when it allegedly failed to provide Hunt with written notice of the claim under Section 10.2 of the Subcontract. Hunt MIL 1, at 2. Hunt argues in particular that under this Court's March 19, 2007 ruling, Titan Stone was deemed to have waived its delay claims, and, by implication, its constructive acceleration claim.[1] *Id.* at 4-5. Hunt concludes that the evidence relating to

---

[1] This Court ruled on March 19, 2007 that Titan Stone had "waived its right for home office overhead under Section 10.2," and that it was not necessary to decide "whether Titan's revised damage calculation was untimely and therefore

constructive acceleration is irrelevant and should not, therefore, be introduced at trial. In addition, Hunt contends that Titan's constructive acceleration claim is untimely because Titan Stone added it nearly a month after the close of discovery. *Id*. at 2.

Titan Stone responds that it submitted an expert report on January 26, 2007 (in accordance with the discovery schedule set by the Court) which set forth a calculation of Titan Stone's damages, including a claim for constructive acceleration. Titan Stone insists, moreover, that its constructive acceleration claim "was not evident until documents produced in discovery revealed the nature and extent of project delays and Titan Stone's premature commencement of erection and alignment activities." Titan Opp'n 1, at 6-7. Titan Stone concludes that its constructive acceleration claim should not be considered untimely.

Section 10.2 of the Agreement provides, in relevant part:

> [S]hould [Titan's] Work be delayed, disrupted or interfered with solely as a result of acts or omissions of Hunt or anyone employed by Hunt on the Project, then, at Hunt's sole discretion, Hunt shall provide [Titan] either:
> (a) an extension of time for completion of the Work equal to the actual impact of the delay, disruption or interference on the critical path of [Titan]'s Work; or
> (b) additional compensation as provided in Section 9.7(a), but only if a written claim for delay is submitted to Hunt within forty-eight (48) hours from the time of the commencement of such delay, disruption or interference.
> Failure to provide such written claim within the prescribed time period shall result in an irrevocable waiver of any such claim. . . . [Titan] expressly waives the right to bring against Hunt any claim for damage for delay, acceleration, interference, extra work resulting from such delay, extended overhead, wage escalation . . .

---

inadmissible." 4/19/07 Opinion, at 19, n.7.

or lost profits or financial impact on Subcontractor's other projects.

*Id.* at 2-3, *quoting* Agreement, § 10.2.

The Court notes that Titan Stone fails to provide any meaningful explanation for its essential failure to discover any sooner the existence of its constructive acceleration claim (other than a very vague argument about the extent of discovery involved in this case) and offers little evidence to suggest that it complied promptly and fully with the obligation to notify Hunt of this new claim.[2]  The Court therefore finds that Titan Stone is equitably barred from asserting its constructive acceleration claim, and is precluded from introducing evidence at trial relating to such a claim.  *See Bender v. Adelson* 187 N.J. 411, 429 (2006) (court upholding trial court's order barring the untimely addition of three experts, rejecting arguments that the delay was attributable to complexity of the case, and noting that defendants had failed to explain why they failed to request extension of time to amend their expert list.).  The Court will, accordingly, grant Hunt's motion in limine No. 1.

### B. HUNT'S MOTION IN LIMINE NO. 2

The New Jersey Supreme Court has consistently held that:

> [e]vidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity. The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain

---

[2] Titan Stone appears to argue that it placed Hunt on notice of such a claim by contending that "Titan's good faith estimate of its damages was contained in an October 6, 2006 letter to Hunt's counsel that specifically reserved Titans [sic] right to supplement its damage calculation." Titan Opp'n 1, at 6.  The Court finds this argument unconvincing.

> are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing--not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. So far as the evidence tends to show, not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant. The judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the expressed general purpose.

*Conway v. 287 Corporate Ctr. Assocs.*, 187 N.J. 259, 269 (2006), *quoting Atlantic Northern Airlines, Inc. v. Schwimmer*, 12 N.J. 293, 301-02 (1953).

As noted by Titan Stone, Hunt appears to seek a broad exclusion of all evidence relating to events prior to the execution date of the Agreement. Such a bar would be inappropriate in light of the New Jersey Supreme Court's application of the parol evidence rule. The Court will accordingly deny Hunt's motion in limine No. 2. The Court nonetheless reserves the right to preclude, at trial, the introduction of such evidence for any purpose other than those specifically allowed under New Jersey law.

### C.     HUNT'S MOTION IN LIMINE NO. 3

Hunt seeks to have this court preclude Titan Stone from introducing at trial the opinion of its expert, Joseph Sullivan. Hunt MIL 3, at 1. Hunt argues that this evidence should be barred on two grounds: (i) on the ground that "Mr. Sullivan incorporated into his expert report the schedule analysis of an unsworn, undesignated expert, Josh Keller, in violation of Rule 703," and (ii) on the ground that Mr. Keller based his schedule analysis – upon which Mr. Sullivan relies heavily – on electronic project schedules that were not used by the parties during the project and

are therefore irrelevant. *Id.* Each argument will be addressed in turn.

        1.       Rule 703

Under Federal Rule of Evidence 703:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

FED. R. EV. 703.

In applying Rule 703, courts have found that "it is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert; and it is apparent from the wording of Rule 703 that there is no general requirement that the other expert testify as well." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *Gilbane Bldg. Co. v. Downers Grove Cmty. High School District No. 99*, No. 02-2260, 2005 U.S. Dist. LEXIS 43231, at *37 n.18 (N.D. Ill. April 5, 2005). Moreover,

> [a]n expert witness is permitted to use assistants in formulating his expert opinion, and normally they need not themselves testify [either]. The opposing party can depose them in order to make sure they performed their tasks competently; and the expert witness can be asked at his deposition whether he supervised them carefully and whether his relying on their assistance was standard practice in his field. If the requisite assurances are forthcoming, the assistants' work need not be introduced into evidence.

*Dura*, at 612-13 (citations omitted).

The Court finds that Mr. Sullivan's reliance on the information extracted by Mr. Keller does not make him a mere "mouthpiece" for Mr. Keller's opinion, as Hunt would have this Court believe. Mr. Keller merely extracted and presented raw data to Mr. Sullivan in format that was more user-friendly and manageable.

        2.     Relevance

Hunt contends that the Keller data upon which Mr. Sullivan relied was "based on electronic schedules that were not used to manage the Project." Hunt MIL 3, at 6. Hunt submits to the Court that the expert's analysis "must accurately reflect the contemporaneous information when the delays were occurring," *id.* at 6-7, *quoting* THEODORE J. TRAUNER, CONSTRUCTION DELAYS (1990), and that since the dates upon which Mr. Sullivan relied were different from the dates Hunt actually used to manage the Project, Mr. Sullivan should be precluded from testifying at trial. Hunt MIL 3, at 7-8.

Titan responds, however, that the deposition testimony of Andrew Kobayashi (Hunt's Project Manager for the Project) established that the schedules relied upon by Titan's experts were in fact "created and used by Kobayashi to manage the Project." Titan Opp'n 3, at 7. Indeed, Titan alleges that the schedules at issue were regularly updated, and are to be considered relevant even if it is shown that they were not shared with Hunt's subcontractors. *Id.* at 7-8.

The Court finds that it has insufficient evidence to rule upon this motion. It is not clear whether Hunt actually relied on the schedules, and whether Mr. Sullivan's reliance on such schedules was misplaced. As the trier of fact, this Court will have the opportunity to reconsider this issue at trial. *See AUSA Life Ins. Co. v. Dwyer*, 899 F. Supp. 1200 (S.D.N.Y. 1995) (deeming

premature a motion in limine to preclude expert report, and choosing to wait until trial to rule on admissibility of the report.); *see also In re Commercial Money Ctr., Inc.*, No. 02-16000, 2007 U.S. Dist. LEXIS 37260, at *29-30 (N.D. Ohio May 22, 2007) (court denying motion to exclude expert report, and holding that the assessment of the relevance of expert's testimony would be made at trial.). Any evidence offered at trial that the schedule data isolated by Mr. Keller did not accurately reflect the schedule relied upon by Hunt will be taken into consideration by the Court in assessing the weight to be given to Mr. Sullivan's report and testimony. Accordingly, the Court will deny Hunt's motion in limine No. 3.

      D.      **HUNT'S MOTION IN LIMINE NO. 4**

Hunt contends that this Court should preclude Mr. Keller from testifying at trial, on the grounds that Titan Stone waited until the final pre-trial conference to disclose Mr. Keller as a potential witness.

Hunt argues that Titan's Rule 26 disclosures failed to reveal that Mr. Keller would be called to testify at trial. Hunt MIL 4, at 3. Hunt contends that it served deposition subpoenas on Mr. Keller and Mr. Sullivan on January 29, 2007, but withdrew the Keller subpoena on February 13, 2007 after receiving email confirmation from Titan's counsel that Mr. Keller would not testify at trial. *Id.* at 2. Per the scheduling Order issued by this Court on October 10, 2006, fact discovery in this matter was to be completed by December 29, 2006, and expert discovery was to end by February 16, 2007. Hunt alleges that Titan Stone only revealed that it would ask Mr. Keller to testify during the lead-up to the February 23, 2007 final-pretrial conference and in the final pre-trial order, well after the close of discovery. *Id.* at 2-3.

Titan Stone responds that it "listed Keller as a potential witness in the event that it was

necessary to have him to testify as a rebuttal witness to confirm that his role was to retrieve Primavera Scheduling data from the Project from the computer disk produced by Hunt and present it to Sullivan . . . ." Titan Opp'n 4, at 3. Titan Stone adds that Hunt is well aware that it does not expect to call Keller as an expert or fact witness in its case-in-chief. *Id*. at 2. Titan Stone argues, moreover, that Hunt "had ample time to request permission to depose Keller once Hunt became aware that Titan [Stone] listed Keller as a witness," and adds that Hunt did not object to Mr. Keller being listed as a witness during the First Final PreTrial Conference. *Id.* at 3. According to Titan, Hunt first objected to Mr. Keller testifying "[o]ver 2 ½ months later, at the second Final Pretrial Conference on May 7, 2007." *Id.* at 4.

Courts in this Circuit have "allowed parties to call witnesses in rebuttal even if the witness was not discussed in a pre-trial order, so long as the witness and his testimony are within the scope of proper rebuttal." *Upshur v. Sheperd*, 538 F. Supp. 1176, 1180 (3d Cir. 1982). The Court will allow Titan to call Mr. Keller as a rebuttal witness, and reserves the right to exclude any testimony on his part that is irrelevant or that ventures beyond the scope of proper rebuttal.

### E. TITAN'S MOTION IN LIMINE NO. 1

Titan Stone argues that Hunt put forward Allyn Kilsheimer as a purported structural engineering expert in "response to a document created by Titan's consultant, CCS Associates, Inc. ("CCS")." Titan MIL 1, at 1. Titan Stone claims that Mr. Kilsheimer should be precluded from testifying at trial on the ground that his opinions are not relevant to the issues on trial, or, in the alternative, on the ground that his testimony would consist of improper legal opinions and that he would be made to testify on issues for which he has admitted to have no factual basis. Each argument will be addressed in turn.

9

      1.      Relevance, waste of judicial resources.

Titan Stone contends that CCS "prepared an analysis of Titan[ Stone's] claims [against Hunt] in a document entitled, 'Request for Equitable Adjustment.' The contents of the document were discussed at a meeting between Titan [Stone] and Hunt, but the document was never provided to Hunt . . . ." Titan MIL 1, at 4. Titan Stone claims that Mr. Kilsheimer's expert report, and his expected testimony at trial, relate primarily to the contents of the CCS report. *Id.* Titan Stone concludes that since the CCS report will play no part at the trial, Mr. Kilsheimer's testimony should be barred as irrelevant.

Hunt responds that sections of the CCS report are copied verbatim into the Second Amended Complaint, and that Mr. Kilsheimer's expert report merely attempts to address those allegations. Hunt Opp'n 1, at 13. In essence, Hunt argues that "[t]hough Mr. Kilsheimer is responding facially to the CCS [report], he is responding to the substance of Titan's Second Amended Complaint." *Id.* at 14-15.

The Court will have an opportunity at trial to assess whether Mr. Kilsheimer's testimony addresses issues that are relevant to this action, or whether he is offered on the stand merely to discuss the CCS report. *See AUSA Life,* 899 F. Supp. 1200; *see also In re Commercial Money,* 2007 U.S. Dist. LEXIS at *29. Accordingly, the Court will decline to grant Titan's motion in limine on the ground of relevance.

      2.      Improper legal opinions, lack of factual basis for opinion.

In the alternative, Titan Stone argues that the Court should preclude Kilsheimer from testifying at trial on the grounds that he will offer improper legal opinions, and because he lacks a factual basis for his opinion in this case. It is indeed beyond dispute that "experts may not invade

the court's province by testifying on issues of law," *Casper v. SMG*, 389 F. Supp. 2d 618, 620 (D.N.J. 2005), *quoting In re IPO Sec. Lit.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001), and that an expert's testimony will only be permitted if "the testimony is based upon sufficient facts or data . . . ." FED. R. EV. 702.

This Court finds, however, that the determinations of (i) whether or not Mr. Kilsheimer will improperly testify as to issue of law and (ii) whether he has a basis in fact for his opinion, are best made at trial. In a non-jury case such as this one, a broad bar on Mr. Kilsheimer's testimony is not appropriate. Titan is free to object to Mr. Kilsheimer's testimony at trial to the extent it believes him to be providing improper legal opinions. The Court will rule on those objections at that time. Similarly, the Court will perform its own assessment of whether Mr. Kilsheimer's testimony has a basis in fact, and will take its findings into consideration in assessing the credibility of the testimony offered by that expert at trial. Accordingly, the Court will deny Titan's motion in limine No. 1.

### F. TITAN'S MOTION IN LIMINE NO. 2

Similarly, Titan Stone argues that Mr. Boland should be precluded from testifying at trial on the grounds that he will offer impermissible legal opinions to the Court, and on the grounds that his there is no factual basis for his opinions in this matter. Again, the Court finds that in the absence of a jury the assessment of the validity of these arguments is best left for trial. Accordingly, the Court will deny Titan's motion in limine No. 2.

## III.     CONCLUSION

For the foregoing reasons, the Court will grant Hunt's motion in limine No. 1, deny Hunt's motions in limine Nos. 2, 3 and 4, and deny Titan's motions in limine Nos. 1 and 2.  An appropriate form of Order accompanies this Opinion.

Dated : June 5, 2007

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.
