NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | |
| TITAN STONE, TILE & MASONRY, INC., : | |
| : | |
| Plaintiff, : | Civ. No. 05-3362  (GEB) |
| v. : | |
| | **SUPPLEMENTAL FINDINGS** |
| HUNT CONSTRUCTION GROUP, INC., : | **OF FACT AND** |
| | **CONCLUSIONS OF LAW** |
| Defendant. : | |
| HUNT CONSTRUCTION GROUP, INC., : | |
| : | |
| Third-Party Plaintiff, : | |
| v. : | |
| INTERNATIONAL FIDELITY INSURANCE : | |
| COMPANY, : | |
| : | |
| Third-Party Defendant. : | |
| _____ | |

## BROWN, Chief Judge

This matter comes before the Court upon the motion for attorneys' fees of Hunt
Construction Group, Inc. ("Hunt"), and the supplemental damages briefs submitted at the Court's
request by Hunt, Titan Stone, Tile & Masonry, Inc. ("Titan") and International Fidelity Insurance
Co. ("IFIC").  The Court has reviewed the parties' submissions and will forgo oral argument
pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Court holds
that Titan and IFIC are jointly and severally liable to Hunt in the amount of $1,084,740.2, and
that Hunt's motion for attorneys' fees is granted in part and denied in part.

**BACKGROUND**

The Court conducted a non-jury trial in this matter from June 5, 2007 to July 18, 2007, and had the opportunity to observe the manner and demeanor of the witnesses and to assess their credibility. *See United States v. $33,500 in U.S. Currency*, No. 86-3348, 1988 U.S. Dist. LEXIS 19475, at *2 (D.N.J. Aug. 17, 1988). On October 30, 2007, this Court issued its Findings of Fact and Conclusions of Law ("FOF"). The factual background of this case is addressed at length in that filing, and will not be repeated here. The Court at that time ruled on most of the claims set forth by the parties, but requested additional briefing addressing the amount of damages to be awarded to either side, if any. (FOF at 54.) The Court also dismissed without prejudice both parties' motions for attorneys's fees on the grounds that neither party had submitted reasonably detailed accounts of their fees. (*Id*. at 55-56.)

On November 30, 2007, both Hunt and Titan filed supplemental briefs on the issue of damages. Hunt also moved for attorneys' fees on that day.

**DISCUSSION**

    A.     Damages

Section 30.1 of the subcontractor agreement between Hunt and Titan ("the Agreement") provides that if the cost and expense incurred by Hunt to complete Titan's work:

> shall exceed [the] unpaid balance [of the Agreement], then [Titan] shall pay the difference to Hunt as set forth below. Such cost and expense shall include not only the cost of completing said portion of the subject portion of Work to the satisfaction of Hunt, the Owner and the Designer, and of performing and furnishing all labor, services, materials, equipment, and other items required therefore, but also all losses, damages, costs and expenses, including reasonable attorneys' fees and disbursements sustained, incurred or suffered by reason of or resulting from [Titan's] default.

(Declaration of Larry A. Weisman ("Weisman Decl.") Docket Entry No. 3, Ex. A (the "Agreement") Section 30.1.)  Moreover, as the Court explained in its FOF, "Hunt may deduct from any payment due [to Titan] any costs incurred by Hunt which are chargeable to [Titan]" under Section 5.6 of the Agreement.  (FOF at 54-55.)

Both Hunt and Titan agree that the adjusted Agreement price (including the original Agreement price and the two Change Orders executed by the parties) is $3,712,605.00.  (Hunt Supplemental Damages Brief ("Hunt Supp. Br.") at 3; Titan Proposed Findings of Fact ("Titan Prop. FOF") at 63 n.19.)  Hunt paid Titan $1,995,732.20 for work performed on the project.  (Hunt Supp. Br. at 3; Titan Ex. 128 C.)  The balance of the Agreement is therefore $1,716,872.8.

The total backcharges requested by Hunt total $3,096,996.22. (Hunt Supp. Br. at 2 n.2.)  The Court disallowed some of the backcharges in its FOF. These disallowed backcharges – relating to Change Orders ("CO") number 3, 25, 45, 58, 60, 73, 74, 91 and 97 – amount to a total of $261,935.00.[1] (Hunt Ex. 845; Titan Supp. Br. Ex. A.)

The Court notes that CO 99 was not included in Hunt's Exhibit 845, in which it listed all other requested COs.  It is, however, included in the record as Titan's exhibit 87H.  The description of the work to be performed under the CO reads as follows: "Provide all labor, materials, equipment, tools and services required for the addition of added CMU pilasters at the north and south entries as per RFI #106."  (Titan Ex. 87H.)  Based on the description of the change order, the Court finds that it should be included in the calculation of damages and credited to Titan.

---

[1]    Titan's submissions requests credit for $239,254.00, but that number does not include credit for CO number 3 in the amount of $23,040, which this Court disallowed in its FOF. (FOF at 51.)

Turning to COs 70 and 78, Titan acknowledges the Court's holding that the concrete chipping did not delay Titan, but insists that the Court did not find that Titan was responsible for the costs of performing the concrete chipping or concrete filling represented in COs 70 and 78. (Titan Supp. Br. Ex. 2 n.17.)  The Court finds Titan's argument convincing.  While the FOF acknowledged the testimony of Mr. Kilsheimer that Hunt had to chip the concrete because Titan's panels were allegedly fabricated larger than the building vertical dimension (FOF at 19), the Court finds that Titan not is responsible for the renewed concrete work, and holds that Titan cannot therefore be backcharged for COs 70 and 78.  CO 99 amounts to a Titan credit of $6,909, and COs 70 and 78 represent inadmissible backcharges totaling $26,539 ($4,008 + $22,531).

The total disallowed backcharges thus amount to $295,383 ($261,935 + $26,539 + $6,909).  Subtracting that number from the total amount of backcharges requested by Hunt ($3,096,996.22) leaves $2,801,613.  That number, as the Court explained in its FOF, reflects a 21% markup that must be reduced to a 20% markup.  The total backcharges to which Hunt is entitled therefore amount to ($2,801,613/1.21) x 1.20 = $2,778,459.39.

The Court now turns to the issue of Requests for Change Orders ("RCOs"), which it did not resolve in the FOF.  As this Court explained then:

> Titan claims that 'Hunt requested Titan to perform additional work at the Project for which Titan submitted [RCOs]', but that '[o]ther than Titan's first 2 RCOs, Hunt failed to review or respond to Titan's RCOs while Titan was working on the Project.'  Titan argues that Debbie Luciano's testimony and the documents introduced at trial prove that Hunt was paid for Titan RCOs, yet never paid Titan for them.

FOF at 35.  Titan submits that "[r]egardless of whether Hunt has been paid by [the Owner] for all of the amounts paid to Titan, Hunt is required to pay Titan within a reasonable period of time."

(Titan's Opposition Brief to Hunt's Proposed Findings of Fact ("Titan FOF Opp'n") at 14-15.)

Hunt responds that Debbie Luciano, Jeff Farina and Joseph Giorgio testified that they never reviewed the Agreement to assess whether the work required under the RCOs truly constituted "extra work" not covered by the Agreement.  (Hunt Prop. FOF at 45-46.)  Hunt adds that "[t]he Owner has not paid Hunt for most of Titan's RCO's so the [Agreement's] pay-if-paid clause bars Titan's claims for those amounts."  (*Id.* at 46.)  Hunt submits that it was paid by the Owner for RCO 10, and that this was reflected in the issuance of Change Order No. 99.  (*Id.*)  It contends, however, that the Owner has not paid Hunt for any of the remaining Titan RCOs and that it is therefore not obligated to pay Titan for those costs. (*Id.*)

Hunt further claims that Titan has not carried its burden of showing that it has completed the work for its remaining RCOs.  Specifically, Hunt argues that:

- RCO 9 was rejected by the Owner on February 1, 2005 "because Titan had sought markups which the Owner had specifically disallowed."  (*Id.* at 47, *citing* Vol. 1 (BM) 230:2-236:5.)

- RCO 11 need not be paid because no evidence was introduced by Titan to show its entitlement to this RCO.  (Hunt Prop. FOF at 47.)  Hunt also explains that it "had only asked Titan to 'price' the work for RCO 11 and specifically told Titan not to proceed with the work . . . ."  (*Id.* at 47, *citing* Vol. 8 (Jeff) 47:5-48:10.)

- RCO 14 need not be paid because Jeff Farina allegedly "conceded that Titan had told Hunt that Titan would '<u>NOT</u> proceed with these changes until written directive and acceptance,' and he did not remember if Hunt ever gave that authorization."  (Hunt Prop. FOF at 47, *quoting* Vol. 8 (Jeff) 54:12-55:8.)  Moreover, Hunt suggests that Jeff Farina "was unable to explain the basis for that RCO and could not even identify who had prepared the request for Titan."  (Hunt Prop. FOF, *citing* Vol. 8 (Jeff) 53:1-54:11.)

- RCO 16 need not be paid because the Owner has allegedly not paid Hunt for any of Titan's claims relating to RCO 16, but also because Hunt claims that "Jeff Farina was unable to testify whether Titan had actually incurred

the costs it is seeking for Bulletin 5, in RCO 16."  (Hunt Prop. FOF at 48, *citing* Vol. 8 (Jeff Farina) 56:20-57:21.)

- RCO 17 and 18 need not be paid for a number of reasons.  Indeed, Titan submits that: (i) the work covered by these RCOs was performed in the Fall of 2004, yet Titan gave no notice of the claim until March 2005; (ii) the work at issue was actually part of Titan's scope of work under the Agreement; (iii) much of the work was caused by Titan's panel misfabrication; and (iv) Titan was required under Sections 18 and 21 of the Agreement to submit extra work claims to Hunt within ten days of the date the claim arose, yet failed to do so.  (Hunt Prop. FOF at 48.)

Having reviewed the parties' submissions and the evidence introduced at trial, the Court holds that Titan has not met its burden of proving that it is entitled to payment for these RCOs. Credible evidence was introduced at trial to show that Titan had been directed not to perform the work covered by RCOs 9, 11 and 14.  Moreover, credible evidence was introduced to show that the Owner had not paid for RCOs 9 and 16, and that Hunt therefore had the right, under Section 4.2 of the Agreement, to withhold payment to Titan.[2]  Finally, credible evidence was introduced at trial that Titan failed to timely notify Hunt of the work performed in connection with RCOs 17 and 18, and that Hunt was therefore entitled, under Sections 18 and 21 of the Agreement, to withhold payment for that work.

As the Court explained in the FOF, Section 30.1(5) of the Agreement provides that when the costs incurred by Hunt plus an overhead of 10% and profit of 10% exceed the unpaid balance

---

[2]     That Section of the Agreement provides that:

> Receipt of payment by Hunt from the Owner is a condition precedent:
> (a) to the right of [Titan] to receive payment from Hunt, unless the failure to have received payment from the Owner shall have been caused solely by the fault of Hunt; and
> (b) to [Titan's] right to make any claim against Hunt's payment bond, if a payment bond is posted for the Project.

Agreement, Section 4.2.

6

of the Agreement, Hunt is entitled to the difference.  (FOF at 50-51.)  As discussed above, the

costs incurred by Hunt here total $2,801,613.  The unpaid balance of the Agreement is

$1,716,872.8.  Under the Agreement, Hunt is therefore entitled to damages in the amount of

$1,084,740.2.[3]

The analysis does not stop there, however, as Hunt claims that it is entitled to 6 % in pre-

judgment interest on its total damage recovery against Titan under New Jersey Court Rule 4:42-

11(b).  (Hunt Supp. Br. at 4.)  The rule generally applies only to tort actions, but has been

occasionally applied in other contexts as a matter of equity.  As the New Jersey Supreme Court

explained,

> [u]nlike prejudgment interest in tort actions, which is expressly
> governed by Rule 4:42-11(b), the award of prejudgment interest on
> contract and equitable claims is based on equitable principles.  In
> awarding prejudgment interest, [t]he basic consideration is that the
> defendant has had the use, and the plaintiff has not, of the amount
> in question; and the interest factor simply covers the value of the
> sum awarded for the prejudgment period during which the
> defendant had the benefit of monies to which the plaintiff is found
> to have been earlier entitled.  The allowance of prejudgment
> interest is a matter of discretion for the trial court.

*County of Essex v. First Union Nat'l Bank*, 186 N.J. 46, 61 (2006) (citations omitted), *quoting*

*Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 N.J. 474, 506 (1974).

This Court, however, holds that there are no equitable concerns in the matter at hand

warranting such a departure from the plain language of the statute.  Accordingly, Hunt's request

---

[3]    The Court noted in its FOF that under Section 5.6 of the Agreement, "Hunt may
deduct from any payment due [to Titan], any costs incurred by Hunt which are
chargeable to [Titan]" and concluded that "[i]f the Court ultimately holds that
Titan owes Hunt money, it will be unable to recover against Hunt under [its
conversion and New Jersey Trust Fund Act] claims."  (FOF at 54-55.)  Given the
Court's finding above that Titan does indeed owe Hunt money, Titan's claims
must fail.

for prejudgment interest is denied.

      B.      Hunt's Motion for Attorneys' Fees[4]

New Jersey has a strong policy disfavoring the shifting of attorneys' fees, but courts will

enforce contractual fee-shifting provisions. *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*,

158 N.J. 561, 569-70 (1999).[5]  However, "even where attorney-fee shifting is controlled by

contractual provisions, courts will strictly construe that provision in light of the general policy

disfavoring the award of attorneys' fees." *Id.* at 570, *citing McGuire v. Jersey City*, 125 N.J. 310,

326-27 (1991).  The Agreement in the case at bar includes such an attorney-fee shifting

provision.  It provides as follows:

> Should any dispute between Hunt and [Titan] proceed to
> arbitration or to court, that forum shall award to the prevailing
> party all of its attorneys' fees, disbursements or costs as defined in
> Section 33.6 incurred in connection with the prosecution or
> defense of the dispute.

(Agreement, Section 34.4.)

Even though the contract provides for the award of <u>all</u> fees, "any fee arrangement is

subject to judicial review as to its reasonableness." *Center Grove Assocs. v. Hoerr*, 146 N.J.

Super. 472, 474 (N.J. Super. Ct. App. Div. 1977), *citing Alcoa Edgewater No. 1 Fed. Credit

Union v. Carroll*, 44 N.J. 442, 448 (1965).  New Jersey courts have held that "[t]he threshold

issue in determining whether an attorneys' fee award is reasonable is whether the party seeking

---

[4]     Titan has argued that both parties had waived their right to attorneys' fees in this matter.  (Docket Entry No. 194.)  The Court rejected that contention during a telephone conference with the parties on December 6, 2007.

[5]     Section 34.1 of the Agreement provides that it is to be "governed by and construed in accordance with the laws of the State in which the Project is located" – i.e. New Jersey.  (Agreement, Section 34.1.) Accordingly, the Court will rely on the laws of that State in reaching its decision.

the fee prevailed in the litigation." *N. Bergen*, 158 N.J. at 570, *citing Singer v. State*, 95 N.J. 487, 494 (1984), *cert. denied*, 469 U.S. 832 (1984). As the New Jersey Supreme Court explained in that case, a two-pronged test was established in *Singer* to determine when a party seeking fee shifting has been a prevailing party:

> The first part of the *Singer* test requires '[a] party [to] demonstrate that his lawsuit was causally related to securing the relief obtained; a fee award is justified if [the party's] efforts are a 'necessary and important' factor in obtaining the relief.' The first prong requires a factual causal nexus between the pleading and the relief ultimately received.
>
> The second part of the Singer test requires the party seeking attorneys' fees to show that 'the relief granted had some basis in law.' The second prong requires both a factual and legal determination. The party seeking attorneys' fees need not recover all relief sought, but rather, there must be 'the settling of some dispute that affected the behavior of the [party asked to pay attorneys' fees] towards the [party seeking attorneys' fees].'

*N. Bergen*, 158 N.J. at 570-71 (citations omitted), *quoting Davidson v. Roselle Park Soccer Fed'n*, 304 N.J. Super. 352, 357 (N.J. Super. Ct. Ch. Div. 1996); *see also Packard-Bamberger & Co. v. Collier*, 167 N.J. 427 (2001). Courts have noted, however, that "if a successful [prevailing party] has achieved only limited relief in comparison to all of the relief sought, the [trial] court must determine whether the expenditure of counsel's time on the entire litigation was reasonable in relation to the actual relief obtained . . . and, if not, reduce the award proportionately." *N. Bergen*, 158 N.J. at 572, *citing Singer*, 95 N.J. at 500; *see also Rendine v. Pantzer*, 141 N.J. 292, 336 (1995).

Hunt submits to the Court that it is entitled – under the New Jersey standard set forth above and the plain language of the Agreement – to an award of attorneys' fees in the amount of $3,737,333.32. (Hunt. Mot. at 21.) Titan, however, takes exception to Hunt's request and

contends that the Court "should [only] allow reasonable attorneys' fees of $1,214,489.35 and reasonable expenses of $57,202.59."  (Titan Opp'n at 51.)

As a threshold matter, Titan submits that both Titan and Hunt prevailed at trial.  This contention is without merit.  Hunt has prevailed on all the counts set forth in Titan's complaints and Hunt's counterclaims.[6]  Titan's singular success has been to obtain the dismissal of some individual backcharges sought by Hunt that were inadequately supported in the record at trial. Victory in such minor skirmishes does not make Titan a "prevailing party" under any reasonable interpretation of the term.  *See Kellam Assocs. Inc. v. Angel Projects, LLC*, 357 N.J. Super. 132 (N.J. Super. Ct. App. Div. 2003) (court holding that plaintiff was a 'prevailing party' when plaintiff had won the vast majority of the damages it had sought.).  Applying the two-pronged *Singer* test to the case at bar, it is therefore clear that Hunt is the prevailing party.  The first prong of Singer is satisfied because Hunt's claims were compulsory counterclaims that it would have lost had it not established them in response to Titan's claims.  The second prong is also met because this Court's Order filed in conjunction with its Findings of Fact and Conclusions of Law (along with its findings above) settled the dispute between the parties.

The Court notes that the pro-rata reduction in attorneys' fees suggested by the *North*

---

[6]    Indeed, Titan's Count II (Fraud), VII (Negligent Misrepresentation) and VIII (Negligent Contract Administration) were dismissed by Orders of this Court dated September 26, 2006 and January 22, 2007 (Docket Entries No. 47, 70); Titan's Count V (quantum meruit), Count IX (Unjust Enrichment), Count X (Constructive Trust), Count XII (Payment Bond) and Count XIII (Performance Bond) were the subject of a summary judgment order in favor of Hunt dated March 20, 2007 (Docket Entry No. 96); and Titan's Count I (Breach of Contract), Count III (Anticipatory Breach/Repudiation), Count IV (Breach of Implied Covenant of Good Faith and Fair Dealing), Count VI (Conversion), Count XI (Violation of New Jersey Trust Fund Act) and Hunt's Counts I and II (Breach of Contract) were all decided in Hunt's favor in this Court's FOF and the instant Supplemental Findings of Fact and Conclusions of Law.

*Bergen* court for cases involving a party that has enjoyed only limited success on his or her claims is not appropriate here.  Indeed, "[i]f the results obtained are fully effective in vindicating [a party's] rights, counsel should recover for *all* hours reasonably expended on the litigation." *Singer*, 95 N.J. at 499 (emphasis added). That does not, however, spell the end of this Court's analysis.  Indeed, "[a]lthough a prevailing party ordinarily is entitled to an award of counsel fees, the trial court has a responsibility to determine what fee is 'reasonable' under all the circumstances." *Bolyard v. Berman*, 274 N.J. Super. 565, at 584 (N.J. Super. Ct. App. Div. 1994).

Some of the factors to be taken into consideration in assessing reasonableness of fees are set out in New Jersey Rule of Professional Conduct 1.5(a), which provides as follows:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent.

N.J. R. Prof. Cond. 1.5(a).  Titan maintains that Hunt's request for attorneys' fees is unreasonable under many of these factors.

1.      The Total Fees Requested

Titan submits that the "unreasonableness of Hunt's request for attorneys' fees and costs is magnified when the amount sought by Hunt is compared with the amount at issue in the case." (Titan Opp'n at 12.)  Indeed , it contends that "Hunt is asking the Court to make an award of over $3.7 million in attorneys' fees and costs . . . [an] amount more than the amount that Titan was to be paid in full under the [Agreement]."  (*Id.*)  The Court does not agree that this, alone, is cause for a reduction of the fees requested.  New Jersey courts have acknowledged that there is no requirement that the fee award be proportional to the damages recovered in the litigation. *Grubbs v. Knoll*, 376 N.J. Super. 420, at 432 (N.J. Super. Ct. App. Div. 2005); *Blakey v. Continental Airlines*, 2 F. Supp. 2d 598, 605 (D.N.J. 1998), *citing Szczepanski v. Newcomb Medic. Center*, 141 N.J. 346, 366 (1995) ("[T]here is no requirement that the fee award be proportional to the damages recovered in the litigation . . . .").  The Court will analyze the billing records carefully to ensure that all fees and hours billed are reasonable, but will not impose an automatic reduction in the fees solely because the attorneys' fees match the Agreement amount in magnitude.

2.      The Hourly Rate Sought by Hunt

According to Titan, Hunt's main counsel Thelen Reid Brown Raysman & Steiner LLP ("Thelen") requests hourly rates ranging from $425 to $510 per hour for Barbara G. Werther, from $280 to $370 for its then-associate Michael S. McNamara, and from $90 to $220 for paralegals.  (Titan Opp'n at 23.)  Titan insists that the rates requested by Thelen "must be reduced because they exceed the prevailing New Jersey market rates that govern the reimbursable hourly rate in this matter."  (*Id*.)  Moreover, Titan submits that the applicable rule in this case is

that "the forum community is the relevant community for purposes of determining hourly rates unless the fee applicant can show that the case requires the special expertise of counsel from a non-forum location or that counsel from the forum locale are unwilling to take on the case." (*Id.* at 24, *citing Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005), *Public Interest Research Grp. v. Windall*, 51 F.3d 1179, 1187-88 (3d Cir. 1995).) Titan argues that neither of these conditions is met in the case at bar. (Titan Opp'n at 24-25.)

Hunt responds that New Jersey has not adopted the "forum rate" rule and that Titan's analysis is therefore fatally flawed. (Hunt Reply Br. at 3-4.) In the alternative, Hunt argues that if that rule were to apply, Thelen's rates would be deemed reasonable as they allegedly fall within the range listed in the National Law Journal's annual survey for New Jersey law firms. (*Id.* at 4-5.)

The Court finds convincing Hunt's evidence that the billing rates it used during the litigation were within the range listed as common in New Jersey. Indeed, the National Law Journal's annual survey for 2006 and 2007 lists rate ranges for New Jersey law firms which are consistent with the rates sought by Hunt. (Hunt Reply Br. Exs. A, B.) Under the circumstances, the hourly rates relied upon by Hunt do not suggest that the attorneys' fees they request are unreasonable.

          3.     The Number of Hours Billed by Hunt

Titan submits that the number of hours billed by Hunt is excessive and unreasonable. (Titan Opp'n at 28.) Titan argues that Thelen spent far too much time on legal research considering the nature of the case and its attorneys' expertise in the field. (*Id.* at 28-29.) It also claims that the attorneys billed too much time working with the experts. (*Id.* at 30.) Finally,

Titan suggests that Hunt's counsel billed an excessive amount of time in connection with the motion to dismiss, the motion for summary judgment, the pretrial order, the post-trial submissions, the subpoenas and depositions, the performance of clerical tasks, cite-checking, and the creation and maintenance of document filing systems.  (*Id.* at 30-35.)  Titan requests reductions in the number of billed hours between 50% to 100% for each of those categories of tasks.

Having reviewed the billing records submitted by Titan, the Court finds that the time spent on the tasks outlined above was not unreasonable.  While the hours billed are considerable, they are not out of proportion with those one would expect from experienced, conscientious counsel such as the ones involved in this matter, particularly in an extensive, complex, hard-fought, document- and motion-heavy litigation like the instant one.

4.    Billing for Travel Between Washington, D.C. and New Jersey

Titan submits that Hunt "has requested payment of over $30,000 for more than 115 hours spent by Thelen to travel between Washington, DC and New Jersey."  (*Id*. at 35.)  Titan argues that "Hunt had a right to choose Thelen, but cannot now seek to have Titan pay the costs of getting those attorneys to New Jersey."  (*Id.*)  The Court notes that the Third Circuit in *Interfaith* held that "under normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel. However, where forum counsel are unwilling to represent the plaintiff, such costs are compensable." *Interfaith*, 426 F.3d at 710. That case, however, dealt with the award of attorneys' fees under a federal statute (42 U.S.C. § 6972(e)) and is therefore not controlling here. Nonetheless, the logic of the holding is convincing, and the Court will decline to award the fees

14

incurred in connection with travel between Washington, D.C. and New Jersey.

         5.      Time Spent by Riker at Trial

Titan submits that the Court should exclude the amount of time spent at trial by representatives of Riker, Danzig, Scherer, Hyland & Perretti LLP ("Riker") – Hunt's local counsel in this matter – because "Riker's presence . . . was not necessary to the prosecution or defense of the case." (Titan Opp'n at 36-37.)   However, upon inquiry by Hunt's local counsel at the beginning of trial, the Court requested that she be present for the duration of the trial.  Under the circumstances, the Court deems local counsel's presence "necessary."

         6.      Time Spent on Matters Unrelated to the Prosecution or Defense of the Federal Court Action

Titan takes exception to Hunt's inclusion of time allegedly spent on matters "unrelated to the prosecution or defense of the Federal Court action." (*Id*. at 37.)  In particular, Titan submits that Section 30.1(5) of the Agreement provides only for the recovery of attorneys' fees "incurred by Hunt relating to Titan's default and not the subsequent litigation." (*Id.* at 38.)  The Court rejects that interpretation as inconsistent with the language of the Agreement.

Titan also suggests that Hunt is not entitled to the reimbursement of attorneys' fees relating to the underlying state court proceedings or the parties' attempts to mediate and settle the matter. (*Id.*)  The Court holds that the language of the Agreement does provides for the reimbursement of those fees, as long as they are reasonable.  Titan appears to mistakenly assume that this Court only has jurisdiction to award attorneys' fees for attorney representation that occurs in this forum.  The Court's role here is to apply the provisions of the Agreement.  To the extent that it provides for the reimbursement of attorney's fees in other fora, the Court will

enforce its terms so long as the resulting fees are reasonable.[7]

> 7.      Time Spent on Vague and Non-Specific Tasks

Titan argues that "Hunt is also seeking to recover almost $5,000 for non-specific tasks billed by Thelen and Riker."  (*Id.* at 40.)  Titan claims that "[t]he[se] time records are completely devoid of any description that would allow the Court or Titan to review them for reasonableness or necessity."  (*Id.*)  These are set out in detail in Exhibit 33 to John Agnello's declaration to the Court.  (Declaration of John Agnello ("Agnello Decl.") Ex. 33.)  The Court agrees with Titan that Hunt has failed to substantiate the billing entries at issue.  Accordingly, the Court is unable to review them for reasonableness and must therefore disallow the corresponding amounts of fees.

> 8.      Hunt's Expenses

As a threshold matter, Titan submits that "Hunt has requested over $355,000 in expenses allegedly incurred by Thelen, Riker, KCE, Greyhawk and Hunt directly, yet Hunt has provided no back-up documentation for its claims for expenses.  (Titan Opp'n at 41.)  Hunt responds that "[c]ontrary to Titan's argument, Hunt included receipts for $143,913.26 of its costs . . . ."  (Hunt Reply Br. at 7-8.)  As for the rest of the expenses billed to Hunt, it submits that Thelen Reid's billing system is accurate, that it has "systems in place to ensure that costs are billed properly," and that each charge was identified by description and date.  (*Id.* at 7.)  Hunt contends that it has met its burden of proving these expenses, and that if the Court disagrees, "the proper remedy is not to reject the specific costs completely but to reduce them."  (*Id.* at 8.)  The Court will, in its

---

[7]      The Court notes that Hunt has withdrawn its request for the reimbursement of attorneys' fees incurred in connection with the New Jersey Department of Labor, and the College of New Jersey audit.  (Hunt Reply Br. at 7 n.4.)

discretion, award Hunt the expenses it seeks to the extent that they are backed by receipts – i.e. any billed expense not accompanied by a receipt is voided for purposes of the attorney fee award.

Titan also takes exception to the award of fees for travel expenses, lodgings, meals, overnight delivery and messenger services, computerized research, photocopying, duplication, faxing, and others.  New Jersey courts have held, however, that "[a]ttorney's fees may . . . be recovered for such items as meals, lodging, messenger fees, long distance telephone calls, photocopying, depositions and copies, trial transcripts, and other out of pocket expenses that are of the type that an attorney would normally bill a fee paying client."  *Council Enters., Inc. v. Atlantic City*, 200 N.J. 431, 443 (1984).  The expenses for which Hunt seeks reimbursement are of that type.  The Court will therefore grant Hunt's request for fees with the caveat outlined above and the following reservation – that Titan is not compelled to pay for expenses relating to travel Dallas, San Francisco, and Phoenix, which do not appear related to this litigation. (*See* Declaration of Barbara Werther ("Werther Decl.") Ex. N.)

9.      Fraud on the Court

Titan submits that the expert fees requested by Hunt should be denied in their entirety under the doctrine of fraud on the court.  Indeed, Titan contends that the experts' testimony established that Hunt's lawyers had little involvement with the expert reports, yet the billing records allegedly show that they participated excessively in the preparation of said reports. (Titan Opp'n at 17-18.)

Hunt responds that a proper review of its experts' deposition transcripts in fact reveals pages' worth of testimony relating to extensive contact between the experts and Hunt's attorneys. (Hunt Reply at 16-17.)  Hunt maintains, however, that its attorneys' work with the experts was

"well within the bounds of acceptable practice." (*Id.* at 18.)

The Court notes, as a threshold matter, Titan's puzzling failure to raise this issue in its Proposed Findings of Fact and Conclusions of Law. Nevertheless, the Court will consider Titan's argument on the merits. As such, it must be rejected. Nothing in the record suggests that Hunt's experts have committed fraud on the court. *Hyland v. Kirkman*, 204 N.J. Super. 345, 374 (N.J. Super. Ct. 1985), *quoting Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180 (8th Cir. 1976) ("Fraud on the court, though not easily defined, can be characterized as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense."). It is clear that Hunt's attorneys were involved in the process of preparing the expert reports. Such behavior is normal and has been recognized as such by this Court in *Crowley v. Chait*, 322 F. Supp. 2d 530 (D.N.J. 2004). The Court has not been presented with any convincing evidence that Hunt's actions violated the precepts of Federal Rule of Civil Procedure 26(a)(2)(B).[8]

C.      IFIC's Liability for Attorneys' Fees

IFIC insists that "under no circumstances can [it] be held liable for Hunt's attorneys' fees." (Titan Opp'n at 6.) As a threshold matter, IFIC argues that its "liability under the Performance Bond does not extend to attorneys' fees or costs." (*Id.* at 7.) In addition, IFIC claims that New Jersey Court Rule 4:42-9 does not permit the Court to award attorneys' fees on performance bond claims. (*Id.*) That rule provides, in relevant part, that "[n]o fee for legal services shall be allowed except . . . [i]n an action upon a liability or indemnity of insurance, in

---

[8]      The Advisory Committee notes to Rule 26(a)(2)(B) provides that it "does not preclude counsel from providing assistance to experts in preparing the reports, and indeed . . . assistance may be needed." FED. R. CIV. P. 26(a)(2)(B) advisory committee's note.

favor of a successful claimant." N.J. Ct. R. 4:42-9(a)(6).[9]  IFIC argues that this exception to the American Rule has not been extended to cover performance bonds.  (*Id.*)

      This Court held in its FOF that "IFIC can be held liable under the surety bond for any amount owed by Titan to Hunt." (FOF at 56.)  However, the New Jersey Superior Court held in *Middletown Twp. v. Colen*, 164 N.J. Super. 193 (N.J. Super. Ct. Law Div. 1978) that Rule 4:42-9(a)(6) did not apply in an action brought against a surety under a bond that guaranteed the construction of a residence.  The court explained that the rule was to be "strictly construed so as to limit its application only to true liability and indemnity insurance policies," and that courts had to "distinguish between contracts of indemnity, where the promisor undertakes to protect the promisee against loss or liability to a third person, and suretyship contracts, where the undertaking is to protect the promisee from acts or defaults of a third person." *Id.* at 196.

      In *Eagle Fire Protection Corp. v. First Indemnity*, for example, the Supreme Court of New Jersey held that the surety's obligation under a bond did not extend to paying for a subcontractor's attorneys' fees incurred in litigation with the general contractor following the general contractor's failure to pay subcontractor for work performed.  The court concluded that "[b]ecause th[at was] not a case where the insurer agreed to protect the insured from third-party claims, R. 4:42-9(a)(6) [was] inapposite." *Eagle Fire Prot. Corp. v. First Indemnity of Am.*, 145 N.J. 345, 365 (1996).

      In the case at bar, the surety bond does not explicitly cover the attorneys' fees that the

---

[9]     "State rules concerning the award or denial of attorneys' fees are to be applied in cases where federal jurisdiction is based on diversity . . ." unless such rules "run counter to federal statutes or policy considerations." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 775 n.46 (3d Cir. 1990).  The Court is not aware of any federal statutes or policy considerations that would counsel against applying N.J. Ct. R. 4:42-9(a)(6).

parties might incur in connection with Project-related litigation.  Moreover, the New Jersey Supreme Court has made clear that "a surety is chargeable only according to the strict terms of its undertaking and its obligations cannot and should not be extended either by implication or by construction beyond the confines of its contract." *Id*, at 356, *citing Monmouth Lumber Co. v. Indemnity Ins. Co. of N.A.*, 21 N.J. 439, 452 (1956).  In light of this precedent, and the New Jersey courts' analysis in *Middletown* and *Eagle Fire*, the Court holds that IFIC is not liable to Titan for this Court's award of attorneys' fees against Titan.

**CONCLUSION**

For the foregoing reasons, the Court holds that Titan and IFIC are jointly and severally liable to Hunt for damages in the amount of $1,084,740.2, and holds that Titan is solely liable to Hunt for Hunt's attorneys' fees to the extent that such fees have been deemed allowable herein. An appropriate form of Order accompanies these Supplemental Findings of Fact and Conclusions of Law.

Dated: March 7, 2008

     s/ Garrett E. Brown, Jr.
     GARRETT E. BROWN, JR., U.S.D.J.